IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WILLIAM WARDLOW, an individual, | 6:17-cv-01100-AA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| U-HAUL INTERNATIONAL, INC.; and DOES 1 through 50, inclusive, | |
| Defendants. | |

AIKEN, District Judge:

Plaintiff William Wardlow is an Oregon citizen and an attorney. Defendant U-Haul International, Inc. is a business incorporated in Nevada with its primary business location in Arizona. Plaintiff filed suit in Deschutes County Circuit Court alleging intentional and negligent misrepresentations and unlawful trade practice by defendant. Defendant removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiff moves for an order remanding this case to state court. (doc. 10) Defendant subsequently moved to dismiss the complaint or, in the alternative, stay proceedings and compel arbitration. (doc. 11.)

For the reasons set forth below, plaintiff's Motion to Remand is DENIED, and defendant's Motion to Stay and Compel Arbitration is GRANTED.

Page 1 – OPINION AND ORDER

## BACKGROUND

This case arises from a dispute over a trailer rental. On May 26, 2016, plaintiff called defendant's office in Port Angeles, Washington to inquire about the availability of a 6' x 12' trailer. After confirming the availability of the trailer, plaintiff made a reservation to rent the trailer for May 29, 2016, through defendant's online portal. Plaintiff drove with his family to Port Angeles, Washington on May 27, 2016. On May 28, 2016, plaintiff alleges that he received a call informing him that the trailer he reserved was not available. Due to this unavailability, plaintiff asserts that he had to rent and use a smaller trailer on May 29, 2016. He alleges that this forced him to make a second trip from Sunriver, Oregon to Port Angeles, Washington to move items that would not fit on the first trip. Plaintiff also alleges that items were left behind and not moved due to the lack space in the trailer.

Plaintiff avers that he was initially unable to serve defendant in Oregon because defendant's status with the Oregon Secretary of State was "inactive," and its registered agent in Oregon declined to accept service. Wardlow Decl. at ¶ 4. After failed attempts to communicate with defendant's legal department, plaintiff filed his First Amended Complaint listing defendant's two entities in Arizona and Oregon alleging intentional and negligent misrepresentations and unlawful trade practice in Deschutes County Circuit Court. After plaintiff filed a Second Amended Complaint ("SAC"), defendant removed the case to federal court based on diversity jurisdiction.

Plaintiff filed the present motion to remand, alleging that there is no diversity jurisdiction between the parties. Defendant subsequently moved to dismiss or, in the alternative, stay proceedings and compel arbitration.

/ / /

## STANDARDS

A defendant may remove an action filed in state court to federal court if there is diversity or federal question jurisdiction. 28 U.S.C. § 1441(a), (b). If the federal court's jurisdiction is based on diversity rather than a federal question, the action "may be removed only if none of the parties properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

## DISCUSSION

I. *Plaintiff's Motion to Remand*

A motion to remand is proper for challenging removal. 28 U.S.C. §§ 1447(c), 1448. Here, plaintiff challenges defendant's removal arguing that this Court lacks subject matter jurisdiction and that diversity jurisdiction has not been established. For district courts to have original subject matter jurisdiction over civil actions through diversity, the matter in controversy should exceed $75,000 exclusive of interest or costs and the parties must be citizens of different states. 28 U.S.C. § 1332(a).

A. *Amount in Controversy*

In his motion to remand, plaintiff alleges that the amount in controversy is under the required $75,000 threshold. The amount in controversy depends on the value of the unaggregated individual claims, both for monetary damages and equitable relief. *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958–59 (9th Cir. 2001). Potential punitive damages are also part of the amount in controversy. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 946 (9th Cir. 2001). Where a statute authorizes an award of attorney fees, the fees are part of the amount in controversy. *Galt G/S v. JSS Scaninavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998). The Ninth Circuit has not definitively ruled whether prospective, unaccrued attorney fees are part

of the amount in controversy when a case is removed. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 n.2 (9th Cir. 2016). Thus, I examine whether the value of plaintiff's unaggregated claim exceeds the jurisdictional threshold.

The amounts proffered for compensatory and statutory damages are not in controversy. Plaintiff requests compensatory damages in the amount of $1,400.[1] Plaintiff also prays for statutory damages of $200 for each of defendant's alleged violations of O.R.S § 646.608. Plaintiff alleges 44 distinct violations of the statute, meaning that the total request for statutory damages is $8,800 (44 violations times $200 per violation).

Next, I look to plaintiff's potential punitive damages. Oregon law does not allow the pleading of punitive damages in an initial complaint. O.R.S. § 31.725. However, despite Oregon's punitive damages pleading requirements, federal courts may consider the potential for punitive damages when determining the amount in controversy. *Gibson*, 261 F. 3d at 946; *See also Culpepper v. Wells Fargo Bank, N.A.*, 2012 WL 3779038 (D. Or. 2012).

In reviewing awards for punitive damages for unlawful trade practices, Oregon courts have approved ratios of 3.9:1 between the punitive damage award and the economic damage award. *See Allen v. Morgan Drive Away, Inc.*, 273 Or. 614, 615–16 (1975). I find that applying a ratio of 3.9:1 is appropriate here though Oregon Courts have approved awards involving much higher ratios. *See Parrott v. Carr Chevrolet, Inc.*, 331 Or. 537, 564–65 (2001) (upholding a punitive damage award that exceeded economic damages by a ratio of 87:1); *Lithia Medford LM, Inc. v. Yovan*, 254 Or. App. 307, 328–29 (2012). (upholding a punitive damages award that exceeded the economic damages by a 200:1 ratio)

---

[1] Plaintiff alleges his family incurred at least $900 due to extra trips that had to be made and at least $500 worth of items were lost during the move.

Page 4 – OPINION AND ORDER

Therefore, plaintiff's compensatory and statutory damages applied to the ratio of 3.9:1 yields $40,800 in potential punitive damages (total of compensatory and statutory damages multiplied by 3.9).

Next, I consider the amount of plaintiff's attorney fees. When an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy. *Missouri State Life Insurance Company et al. v. Jones*, 290 U.S. 199, 202 (1933); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

Here, plaintiff seeks an award of pre-removal attorney fees based on Rule 11 of the Federal Rules of Civil Procedure. While preserving arguments as to the reasonableness of plaintiff's fee expenditures or the merit of any of plaintiff's claims, defendants do not dispute the inclusion of pre-removal attorneys' fees in assessing the amount in controversy requirement. Therefore, pre-removal attorneys' fees, $28,470 as estimated by plaintiff, may be included in the amount in controversy. *Galt G/S*, 142 F.3d at 1156.

The parties dispute whether potential future attorneys' fees should be considered in calculating the amount in controversy. Initially, I note that "[i]t remains an open question whether attorney's fees that are anticipated but unaccrued at the time of removal or filing in federal court . . . may be included in the amount-in-controversy. Other circuits and the district courts in this circuit are divided on the issue." *Gonzales*, at 649 n.2.

The Third, Fourth, Fifth, and Tenth Circuits all allow potential attorneys' fees to be calculated as part of the amount in controversy, so long as recovery of fees is authorized by

statute or contract.[2] The Tenth Circuit offers the most thorough reasoning regarding the issue. *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (emphasis added) (citing *Missouri State*, 290 U.S. at 202). ("The Supreme Court has long held that when a statute permits recovery of attorney's fees a *reasonable estimate* may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship.")

In contrast, the Seventh Circuit allows only those attorneys' fees (as long as fee recovery is authorized by statute or contract) incurred up to the time of removal to be included in the amount in controversy. *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir. 1998). (Reasoning that "legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed.").[3]

This analysis is consistent with recent District of Oregon cases. *See, Reames v. AB Car Rental Services, Inc.*, 899 F. Supp. 2d 1012, 1016 (D. Or. 2012) (Concluding that "including anticipated, but unaccrued attorney fees in calculating the amount in controversy is necessarily speculative."); *Sturdevant v. 24 Hour Fitness USA, Inc.*, 2017 WL 359175, *3 (D. Or. Jan. 23, 2017) ("The court concludes unaccrued attorney fees are not part of the amount in controversy. The amount in controversy depends on the circumstances *at the time of removal* or filing.")

---

[2] *See, e.g., Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013); *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 873 (5th Cir. 2002); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998).

[3] The court further explained that "the Supreme Court held that legal expenses yet to be incurred on the date a suit begins do not create a 'case or controversy' within the meaning of Article III." *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("An *interest* in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.") (quotation marks omitted) (ellipsis in original) (emphasis added)).

Page 6 – OPINION AND ORDER

(emphasis added) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).[4]

Because attorneys' fees incurred up to the time of removal are concrete and tangible, and any post-removal settlement would be reached taking them into account, their inclusion in the amount in controversy is entirely acceptable. Allowing potential attorneys' fees to be calculated in the amount in controversy risks increasing litigation in federal courts under diversity jurisdiction, contrary to Congress's intent. *See Lynch v. Household Fin. Corp.*, 405 U.S. 538, 550 (1972) (citing legislative history for the proposition that the amount in controversy requirement is designed to "reduce the federal judiciary's workload with regard to cases rising under federal diversity jurisdiction"). Additionally, considering future attorneys' fees tips the presumption towards, instead of against, removal—contrary to the standard set by U.S. Supreme Court. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d at 1087 ("The removal statute is strictly construed against removal jurisdiction.") (citing *Syngenta Crop Prot., Inc.*, 537 U.S. at 32). Therefore, in this case I consider only plaintiff's attorneys' fees incurred by the time of removal in calculating the amount in controversy.

In sum, the amount in controversy in this case exceeds the requirement of $75,000 even without including the contested costs of injunctive relief and disgorgement.[5] Adding

---

[4] Defendant cites *Beaver v. NPC Int'l, Inc.*, 451 F. Supp. 2d 1196, 1199 (D. Or. 2006), in which the court included potential attorneys' fees in the amount in controversy. But *Beaver* did not consider the statutory and policy arguments against counting unaccrued attorney's fees in the amount in controversy. Thus, I find the more recent reasoning in *Reames* and *Sturdevant* convincing.

[5] Defendant also urges this Court to include costs of compliance with the injunctive relief sought by plaintiff. Defendant further argues that this court should include plaintiff's claims for disgorgement in calculating the amount in controversy. Plaintiff argues that because he is bringing suit on behalf of other similarly situated plaintiffs, the costs of compliance and disgorgement may not be aggregated under *Ford, supra*. There, the court held that such costs cannot be aggregated in a class action suit. *In re Ford Motor Co./Citibank (S.D.), N.A.*, at 958–

compensatory damages ($1,400), statutory damages ($8,800), potential punitive damages ($40,800), and pre-removal attorneys' fees ($28,470); the overall amount in controversy for plaintiff's unaggregated claims is $79,470.

B. *Diversity of Citizenship*

Plaintiff is an Oregon citizen and U-Haul International is a Nevada corporation with its principal place of business in Arizona. Plaintiff alleges that defendant is a citizen of Oregon because it accepted jurisdiction of Oregon when it merged with an Arizona corporation. Plaintiff also argues that defendant was once registered as an Oregon Domestic Business Corporation, which makes it fall under the scope of 28 U.S.C. § 1332(c)(1) that deems "a corporation [...] a citizen of every State [...] by which it has been incorporated."

Defendant avers that its acceptance of continuing jurisdiction of Oregon is irrelevant because it concerns personal jurisdiction. Moreover, defendant cites O.R.S. § 60.497(1)(a) which provides that a merged corporation no longer retains the citizenship of the original state when the surviving corporation is a citizen of another state. As to the interpretation of the phrase "has been" in 28 U.S.C. § 1332(c)(1), defendant counters that the Ninth Circuit does not interpret the phrase to include pre-merger situations when surviving corporations are incorporated in foreign states. *See Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 671–72 (9th Cir. 1986). Defendant points to cases from other Circuit courts interpreting the phrase "in which it has been incorporated" to mean "in which it is incorporated." *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1027 (2d Cir. 1992).

---

959. Regardless, it is unnecessary to consider these arguments here, as the unaggregated damages and costs outlined above already place the amount in controversy above the jurisdictional threshold.

Page 8 – OPINION AND ORDER

It is established that "a corporation is typically a citizen of two states for determining the existence of diversity jurisdiction: the state of incorporation and the state in which it has its principal place of business." *Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1234 (9th Cir.1997) (quoting *Breitman v. May Co.*, 37 F.3d 562, 564 (9th Cir.1994)). Here, the record shows that defendant is a Nevada corporation with its principal place of business in Arizona. Thus, I conclude that defendant is not an Oregon citizen. This is supported by the fact that U-Haul International in Arizona is the surviving entity of the past merger, which renders defendant a citizen of Arizona. *See, Mirales v. Wells Fargo Bank, N.A.*, 845 F.Supp.2d 1034, 1046 n. 75 (C.D.Cal.2012) ("[a] company that merges into another company adopts the citizenship of the merged company for diversity purposes."); citing to *Meadows*, 785 F.2d at 672. Because plaintiff is a citizen of Oregon and defendant is a citizen of Nevada and Arizona, diversity of citizenship is met.

Taking the amount in controversy and diversity of citizenship into consideration, this case satisfies the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a). Defendant's removal was proper, and plaintiff's motion to remand is DENIED.

II.  *Defendants' Motion to Dismiss or Stay and Compel Arbitration*

Defendant maintains that a valid and binding arbitration agreement was signed by plaintiff as part of the rental agreement on May 29. In response, plaintiff argues that the arbitration agreements were either revoked or inapplicable to the instant action or equitable claims. Plaintiff further alleges that the agreements are procedurally and substantively unconscionable.

Under the Federal Arbitration Act, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract."

9 U.S.C. § 2. In determining the validity of an arbitration agreement, federal courts "apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (internal quotation marks and citation omitted); *see also Motsinger v. Lithia Rose–FT, Inc.*, 211 Or. App. 610, 613–14, 156 P.3d 156 (2007). Accordingly, "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening federal law." *Al–Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1257 (9th Cir. 2005) (internal quotations and citation omitted).

A.   *Scope of the Agreement*

First, plaintiff alleges that the May 26 agreement was revoked, rendering the arbitration provision therein void. Defendant responds that this dispute is still subject to subsequent May 29 agreement. Plaintiff further contends that the May 29 agreement is inapplicable not only to the instant action, but also to his equitable claims. Defendant avers that the term "claims" as defined by the arbitration agreement is to include all claims arising out of plaintiff's dealings with defendant.

When he rented the 5' x 8' trailer, plaintiff signed a rental contract on May 29, 2016, which included the term: "I agree to submit all legal claims in accordance with the U-Haul Arbitration Agreement, incorporated by reference, and available at uhaul.com/arbitration or from my local U-Haul representative." Settles Decl. Ex. 3. The contract also includes the term just above the signature block: "I acknowledge that I have received and agree to the terms and conditions of this Rental Contract and the Rental Contract Addendum." *Id.*

The Rental Addendum contains additional references to the terms of the Arbitration Agreement listing many of the provisions contained in the agreement. The Arbitration Agreement itself provides that:

> "By commencing or making a reservation to, or agreeing to, purchase retail products or purchase or rent "Equipment" . . . U-Haul and You agree that any and all Claims . . . between U-Haul and You relating in any way to your rental purchase from U-Haul shall be submitted to binding Arbitration before the American Arbitration Association . . ."

Settles Dec. Ex. 4. Especially pertinent to the case, where plaintiff alleges class action claims, is the following provision:

> U-HAUL AND YOU AGREE THAT CLAIMS MAY ONLY BE BROUGHT IN AN INDIVIDUAL CAPACITY AND IN THE NAME OF AN INDIVIDUAL PERSON OR ENTITY AND THAT CLAIMS MUST PROCEED ON AN INDIVIDUAL AND NON-CLASS AND NON REPRESENTATIVE BASIS. U-HAUL AND YOU AGREE THAT CLAIMS OF TWO OR MORE PERSONS MAY NOT BE JOINED OR CONSOLIDATED IN THE SAME ARBITRATION UNLESS ARISING FROM THE SAME TRANSACTION.

Settles Dec. Ex. 4. (capitalization in original). "Claims" for the purposes of the arbitration agreement are defined therein:

> Claims is to be broadly interpreted to include any dispute, claim or cause of action arising out of or relating to, Your dealing with U-Haul, including but not limited to, the reservation and/or reservation process, use of any affiliated U-Haul website, advertising, rental or sales contract, or Equipment. Claims include any and all legal theories, including but not limited to, all statutory and tort claims, that may be asserted by You.

*Id.* Ex. 6.

Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25. An order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960). Here, any ambiguity as to whether defendant actions in failing to provide the 6' x 12' trailer

pursuant to the May 26 rental were in fact "related" to plaintiff's later rental must be resolved in favor of compelling arbitration of the dispute, as it appears that the clause, interpreted broadly, encompasses the claims at issue here. Notably, all the material facts of the SAC occurred within one week of each other. The May 29 and May 26 agreement were both regarding the same contemplated activity of renting a trailer for plaintiff's move. Thus, I conclude that May 29 agreement is applicable to the instant action.

B. *Unconscionability*

Next, plaintiff contends that defendant's arbitration agreements were unconscionable. Under Oregon law, a contractual provision may be rendered unconscionable when there is a "substantial disparity in bargaining power combined with terms that are unreasonably favorable to the party with the greater power...." *Vasquez–Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 567 (2007) (internal quotations omitted). Unconscionability is determined by looking at the procedural and substantive components of an agreement. *Motsinger*, 211 Or.App. at 614, 156 P.3d 156. In deciding whether unconscionability exists as a matter of law, the court looks to the facts that were in existence at the time the contract was made. *Best v. U.S. Nat'l Bank*, 303 Or. 557, 560 (1987). The part asserting unconscionability bears the burden of proof. *Meunier v. Northwestern Mut. Life. Ins. Co.*, 51 F. Supp. 3d 1023, 1031 (D. Or. 2014).

A. *Procedural Unconscionability*

Here, plaintiff alleges procedural unconscionability by relying on both oppression and surprise. Procedural unconscionability looks to two factors at the time of contract formation: oppression and surprise. *Vasquez–Lopez*, 210 Or.App. at 567, 152 P.3d 940. Oppression refers to an inequality of bargaining power where there is an absence of meaningful negotiation. *Id.* Surprise refers to "the extent to which the supposedly agreed-upon terms of the bargain are

hidden" by the party seeking to enforce the agreement. *Id.* However, unequal bargaining power alone is insufficient to render an arbitration agreement unenforceable in Oregon. *See Motsinger v. Lithia Rose-Ft, Inc.*, 211 Or. App. 610, 614 (2007).

First, plaintiff alleges that defendant possesses monopoly power as is a basis for arguing oppression. This argument is unavailing. As defendant correctly notes, it does not hold a monopoly position in the trailer rental services market. Even assuming an unequal bargaining power between an individual customer and a company because of inherent asymmetry of information, such inequality in bargaining power alone does not render an arbitration agreement unconscionable in Oregon. *Motsinger*, 211 Or. App. at 614. Plaintiff argues that consumers have no choice but to accede to the Arbitration agreement. However, the Ninth Circuit has concluded "the take-it-or-leave-it nature of [a contract] is insufficient to render it unenforceable" on account of procedural unconscionability when the arbitration clause "was not hidden or disguised and where the plaintiff was given time to read the documents before assenting to their terms." *Runyan v. Farmers Ins. Exch.*, 2009 WL 10694419, at 4 (D. Or. 2009) (citing *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1094 (9th Cir. 2009)). Here, the claims were not hidden or disguised for the reasons discussed below. Moreover, plaintiff had multiple opportunities to read the Arbitration agreement before assenting to the terms. For all these reasons, the agreement is not void on grounds of oppression.

Next, plaintiff alleges that defendant concealed the arbitration provisions in the agreements which constituted procedural unconscionability due to surprise. While plaintiff focuses on the visibility and accessibility of the specific provisions, defendant focuses on multiple occasions that plaintiff could have actually read and signed the rental agreements containing arbitration provisions.

It is true that inconspicuous contract terms, in general, may be used as evidence to demonstrate surprise and potential procedural unconscionability. However, the fact that plaintiff is an attorney who was given notice throughout the reservation process by means of two separate documents and an addendum weighs against finding surprise. Indeed, in Oregon, a party is "presumed to be familiar with the contents of any document that bears the person's signature." *Motsinger*, 211 Or. App. at 616–17 (citing *First Interstate Bank v. Wilkerson,* 128 Or.App. 328, 337 n. 11, 876 P.2d 326 (1994)). As partially outlined above, the Arbitration Agreement is not overly long, and the second numbered paragraph contains the broad language regarding the scope of the Arbitration Agreement and refers the reader to a further definition of "Claims" at the bottom of the first page, where that term is bolded. The language about the scope of claims subject to arbitration was not buried somewhere inaccessible to plaintiff. In fact, the notice that plaintiff was assenting to the Arbitration Agreement was located mere inches above the signature block in the rental agreement. For all these reasons, I find that the arbitration provisions of the contract were not a surprise such that it was procedurally unconscionable.

B.  *Substantive Unconscionability*

Substantive unconscionability exists where a contract's terms render the agreement unreasonably unfair and one-sided. *Motsinger*, 211 Or. App. at 617 ("Whether the arbitration clause is substantively unconscionable is an inquiry that focuses on the one-sided nature of the substantive terms.") Further, "[t]he substantive fairness of the challenged terms is always an essential issue." *Vasquez–Lopez*, 210 Or. App. at 567 (internal quotations omitted) (noting that only substantive unconscionability is absolutely necessary).

Here, plaintiff briefly alleges substantive unconscionability based on defendant's alleged monopoly power and vaguely on the terms of the Arbitration Agreement itself. Plaintiff's

monopoly power argument is misplaced. Because I have already analyzed defendants' monopoly power in relation to the procedural unconscionability, I will breifly examine the terms of the arbitration agreements. Addressing several provisions of the arbitration agreements, plaintiff alleges that the terms are unfair and one-sided. Defendant counters by elaborating on each provision's language explaining that none of the provisions are substantively unfair. Answering the questions of substantive unconscionability, I first note that the Supreme Court has concluded that waivers of class-wide relief are per se enforceable. *See At&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). Moreover, I find that defendant's Confidentiality provision, and Notice and Demand Procedure are not unreasonably favorable to defendant. Based on the reading of the parties' briefs and the provisions at issue, I do not find defendant's arbitration agreements substantively unconscionable.

Based on the validity of the arbitration agreements signed by plaintiff and absence of procedural or substantive unconscionability, the Arbitration Agreements are enforceable.

Thus, considering all of the arguments from the parties, defendants' motion to stay and compel arbitration is GRANTED. Rather than dismissing this case, the proper remedy is to stay the case and compel arbitration. Once arbitration is completed, I can resolve any outstanding issues which may still exist before entering a final Judgment dismissing the case.

///

///

///

///

///

///

## CONCLUSION

For these reasons set forth herein, plaintiff's Motion to Remand (doc. 10) is DENIED and defendant's Motion to Stay and Compel Arbitration (doc. 11) is GRANTED. This case is therefore STAYED while the parties engage in arbitration pursuant to the terms of the Arbitration Agreement. The parties shall inform the court when arbitration is completed, or within 90 days of this order, the parties shall submit a joint status report to the Court on the status of arbitration.

IT IS SO ORDERED.

Dated this 30th day of March 2018.

*Ann Aiken*
Ann Aiken
United States District Judge